UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

STEPHEN BUSHANSKY,

              Plaintiff,

      v.

OAK STREET HEALTH, INC., MOHIT
KAUSHAL, KIM KECK, PAUL KUSSEROW,
GRIFFIN MYERS, REGINA BENJAMIN,
CHERYL DORSEY, JULIE KLAPSTEIN,
GEOFFREY PRICE, MIKE PYKOSZ,
SRDJAN VUKOVIC, and ROBBERT
VORHOFF,

              Defendants.

---------------------------------------------------------

Case No. _____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

      Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

      1.     This action is brought by Plaintiff against Oak Street Health, Inc. ("Oak Street" or the "Company") and the members of Oak Street's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Oak Street will be acquired by CVS Health Corporation ("CVS") through CVS's subsidiaries CVS Pharmacy, Inc. ("CVS Pharmacy") and Halo Merger Sub Corp. ("Merger Sub") (the "Proposed Transaction").

2.      On February 8, 2023, Oak Street and CVS issued a joint press release announcing entry into an Agreement and Plan of Merger dated February 7, 2023 (the "Merger Agreement"). Under the terms of the Merger Agreement, holders of Oak Street common stock will receive $39.00 in cash for each share of Oak Street common stock (the "Merger Consideration"). The Proposed Transaction is valued at approximately $10.6 billion.

3.      On March 30, 2023, Oak Street filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Oak Street stockholders vote in favor of the Proposed Transaction, omits, or misrepresents material information concerning, among other things: (i) Oak Street management's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview Partners LLC ("Centerview"). The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Oak Street stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, Oak Street's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Oak Street's common stock trades on The New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Oak Street.

9.     Defendant Oak Street is a Delaware corporation, with its principal executive offices located at 30 W. Monroe Street, Suite 1200, Chicago, Illinois 60603.  The Company is a network of value-based primary care centers for adults on Medicare.  Oak Street's common stock trades on The New York Stock Exchange under the ticker symbol "OSH."

10.     Defendant Mohit Kaushal ("Kaushal") has been a director of the Company since 2018.

11.     Defendant Kim Keck ("Keck") has been a director of the Company since 2020.

12.     Defendant Paul Kusserow ("Kusserow") has been a director of the Company since 2018.

13.    Defendant Griffin Myers ("Myers") is the Company's Chief Medical Officer of Provider Engagement and has been a director of the Company since co-founding it in 2012.

14.    Defendant Regina Benjamin ("Benjamin") has been a director of the Company since 2020.

15.    Defendant Cheryl Dorsey ("Dorsey") has been a director of the Company since April 2020.

16.    Defendant Julie Klapstein ("Klapstein") has been a director of the Company since 2020.

17.    Defendant Geoffrey Price ("Price") has been the Company's Chief Innovation Officer since January 2022, and has been a director of the Company since co-founding it in 2012. Defendant Price also previously served as the Company's Chief Operating Officer ("COO") from 2012 to January 2022.

18.    Defendant Mike Pykosz ("Pykosz") has been Chairman of the Board, Chief Executive Officer ("CEO"), and a director of the Company since co-founding it in 2012.

19.    Defendant Srdjan Vukovic ("Vukovic") has been a director of the Company since 2015.

20.    Defendant Robbert Vorhoff ("Vorhoff") has been a director of the Company since 2015.

21.    Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

22.    CVS is a leading diversified health solutions company.  CVS has more than 9,000 retail locations, more than 1,100 walk-in medical clinics, a leading pharmacy benefits manager

with over 110 million plan members with expanding specialty pharmacy solutions and a dedicated

senior pharmacy care business serving more than one million patients per year. CVS Health also

serves an estimated 35 million people through traditional, voluntary and consumer-directed health

insurance products and related services, including expanding Medicare Advantage offerings and a

leading standalone Medicare Part D prescription drug plan.

23.     CVS Pharmacy is a Rhode Island corporation and is a direct, wholly owned

subsidiary of CVS Health and CVS Health's primary operating subsidiary.

24.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of CVS

Pharmacy.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

25.     Founded in 2012, Oak Street Health operates a network of primary care centers

within the United States serving Medicare beneficiaries. Through its centers and management

services organization, Oak Street combines an innovative care model with superior patient

experience. The Company integrates population health analytics, social support services and

primary care into the care model to drive improved outcomes. Oak Street contracts with health

plans and the Center for Medicare & Medicaid Services to generate medical costs savings and

realize a return on its investment in primary care. The Company currently operates more than 160

centers across 21 states.

26.     On February 28, 2023, Oak Street announced its full year 2022 financial results and

business development highlights. Total revenues for the Company were $2.16 billion, up 51%

year over year. Capitated revenue was $2.13 billion, up 52% year over year. Oak Street cared for

approximately 159,000 risk-based patients and 224,000 total patients during 2022. Defendant

Pykosz commented on the results, stating:

> Our team's commitment and hard work delivered outstanding health outcomes and an unmatched patient experience leading to consistent center-level performance and strong full year results. We remain committed to improving the well-being of our patients, bringing new patients to the Oak Street model, and rebuilding healthcare as it should be.

## The Proposed Transaction

27.    On February 8, 2023, Oak Street and CVS issued a joint press release announcing

the Proposed Transaction, which states, in relevant part:

> WOONSOCKET, R.I. and CHICAGO, Feb. 8, 2023 /PRNewswire/ -- CVS Health® (NYSE: CVS) and Oak Street Health (NYSE: OSH) have entered into a definitive agreement under which CVS Health will acquire Oak Street Health in an all-cash transaction at $39 per share, representing an enterprise value of approximately $10.6 billion.
>
> Oak Street Health is a leading multi-payor, value-based primary care company helping older adults stay healthy and live life more fully. With an innovative care model and technology platform designed to deliver consistently superior outcomes and patient experiences, Oak Street Health has demonstrated that its model is scalable.
>
> Bringing CVS Health and Oak Street Health together can significantly benefit patients' long-term health by reducing care costs and improving outcomes – particularly for those in underserved communities. Oak Street Health centers are located where health care services are needed most; more than 50 percent of Oak Street Health's patients have a housing, food or isolation risk factor.
>
> "Combining Oak Street Health's platform with CVS Health's unmatched reach will create the premier value-based primary care solution," said CVS Health President and CEO Karen S. Lynch. "Enhancing our value-based offerings is core to our strategy as we continue to redefine how people access and experience care that is more affordable, convenient and connected."
>
> Oak Street Health employs approximately 600 primary care providers and has 169 medical centers across 21 states. Oak Street Health is differentiated by its leading technology solution, Canopy, which is fully integrated with Oak Street Health's operations and utilized when determining the appropriate type and level of care for each patient. That care will be enhanced by CVS Health's community, home and digital offerings.

- 6 -

"This agreement with CVS Health will accelerate our ability to deliver on our mission and continue improving health outcomes, lowering medical costs, and providing a better patient experience while offering significant value to our shareholders," said Oak Street Health CEO Mike Pykosz.  "Together with CVS Health, we will have access to greater resources and capabilities to expand the reach of our platform, provide more opportunities for our teammates and, most importantly, make a meaningful difference in the lives of the patients we serve."

Following the close of the transaction, Pykosz will continue to lead Oak Street Health, which will become part of CVS Health's recently formed Health Care Delivery organization.  Oak Street Health will continue to serve its extensive network of health plan partners and patients – consistent with CVS Health's payor-agnostic approach to delivering leading solutions.

**Transaction details**

CVS Health will acquire Oak Street Health's outstanding shares for $39 per share in cash, representing an enterprise value of approximately $10.6 billion.  CVS Health expects to fund the transaction through available resources and existing financing capacity and is committed to maintaining its current credit ratings.  The transaction was approved by the Board of Directors at each of the respective companies and is subject to approval by a majority of Oak Street Health's stockholders, receipt of regulatory approval and satisfaction of other customary closing conditions.  Private equity funds affiliated with Newlight Partners LP and General Atlantic LLC and certain members of the Oak Street Health Board of Directors, which collectively own approximately 45% of the common stock of Oak Street Health, have agreed to vote the shares they own in favor of the transaction, subject to customary exceptions.  CVS Health and Oak Street Health anticipate that the transaction will close in 2023.

"Oak Street Health is a premier value-based primary care platform," said CVS Health Chief Financial Officer Shawn M. Guertin.  "We believe that in partnership with CVS Health, Oak Street Health can accelerate its growth and provide an attractive return to our shareholders over time.  The pending acquisitions of Oak Street Health and Signify Health will also meaningfully advance our goal of adding 200 basis points of long-term adjusted operating income growth, a key commitment we made to shareholders at our December 2021 Investor Day."

By 2026, Oak Street Health will have over 300 centers, each of which has the potential to contribute $7 million of Oak Street Health Adjusted EBITDA at maturity, representing more than $2 billion of Oak Street Health embedded Adjusted EBITDA at that time.  Additionally, CVS Health projects more than $500 million in synergy potential over time, enhancing CVS Health's long-term adjusted operating income growth.

CVS Health continues to project that it will achieve 2023 Adjusted EPS in the range of $8.70 to $8.90.   CVS Health is now targeting 2024 Adjusted EPS of approximately $9.00, growing to approximately $10.00 in 2025, with upside in 2025 based on the successful resolution of its Medicare Stars Ratings mitigation efforts.   The 2024 and 2025 Adjusted EPS trajectories reflect the impact of the previously disclosed 2024 Medicare Stars Ratings headwind and Centene contract loss, closing of the Oak Street Health transaction in 2023, as well as projected contributions from the pending Signify Health transaction in 2024 and beyond. Consistent with past practice, CVS Health expects to exclude integration and transaction costs from its Adjusted EPS presentation.

**Advisors**

Credit Suisse Securities (USA) LLC and Lazard Ltd are serving as co-financial advisors to CVS Health. CVS Health was advised on legal matters by Shearman & Sterling LLP, Dechert LLP and McDermott Will & Emery.   Centerview Partners is serving as financial advisor for Oak Street Health and Kirkland & Ellis LLP is acting as Oak Street Health's legal advisor.

## Insiders' Interests in the Proposed Transaction

28.    Oak Street insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Oak Street.

29.    Notably, Company insiders stand to reap substantial financial benefits for securing the deal with CVS.   Pursuant to the Merger Agreement, upon a qualifying termination in connection with the merger, all outstanding Company options, restricted stock awards ("RSAs"), and restricted stock units ("RSUs") held by Oak Street executive officers will vest and convert into the right to receive cash payments.   The following table summarizes the value of the Company equity awards that Oak Street executive officers stand to receive:

| | Shares Subject to Options (#)[1] | Estimated Value of Options ($) | Unvested RSAs (#)[2] | Estimated Value of Unvested RSAs ($) | Shares Subject to Unvested RSUs (#)[3] | Estimated Value of Unvested RSUs ($) | Total Estimated Value ($) |
|---|---|---|---|---|---|---|---|
| **Oak Street Health Executive Officer** | | | | | | | |
| Mike Pykosz | 6,700,367 | 128,931,410 | 1,522,344 | 59,371,416 | — | — | 188,302,826 |
| Geoffrey Price | 2,674,212 | 49,589,753 | 773,644 | 30,172,116 | 55,867 | 2,178,813 | 81,940,682 |
| Dr. Griffin Myers | 1,728,302 | 31,376,609 | 304,158 | 11,862,162 | 19,047 | 742,833 | 43,981,604 |
| Timothy Cook | 871,118 | 16,459,631 | 811,614 | 31,652,946 | 60,766 | 2,369,874 | 50,482,451 |
| Brian Clem | 580,353 | 11,351,339 | 210,900 | 8,225,100 | 59,089 | 2,304,471 | 21,880,910 |
| Robert Guenthner | 417,619 | 7,924,069 | 9,277 | 361,803 | 28,354 | 1,105,806 | 9,391,678 |

30.    Moreover, all outstanding Oak Street options and restricted stock units ("RSUs") held by non-employee directors will vest and convert into the right to receive cash payments upon consummation of the Proposed Transaction.  The following table summarizes the value of the Company equity awards that Company non-employee directors stand to receive:

| | Shares Subject to Options (#)[1] | Estimated Value of Options ($) | Shares Subject to Unvested RSUs (#)[1] | Estimated Value of Unvested RSUs ($) | Total Estimated Value ($) |
|---|---|---|---|---|---|
| **Oak Street Health Non-Employee Directors** | | | | | |
| Dr. Regina Benjamin | — | — | 10,373 | 404,547 | 404,547 |
| Cheryl Dorsey | — | — | 10,373 | 404,547 | 404,547 |
| Julia Klapstein | — | — | 10,373 | 404,547 | 404,547 |
| Robbert Vorhoff | — | — | — | — | — |
| Srdjan Vukovic | — | — | — | — | — |
| Dr. Mohit Kaushal | 3,501 | 63,018 | 10,373 | 404,547 | 467,565 |
| Kim Keck | 62,374 | 1,122,732 | 27,873 | 1,087,047 | 2,209,779 |
| Paul Kusserow | 23,342 | 420,156 | 10,373 | 404,547 | 824,702 |

31.    Further, if they are terminated in connection with the Proposed Transaction, Oak Street's named executive officers will receive substantial cash severance payments, as set forth in the following table:

| Normal; | Cash($) (1) | Equity($) (2) | Continued Health Benefits ($) | Total($) |
|---|---|---|---|---|
| Mike Pykosz | 3,042,373 | 124,810,058 | 0 | 127,852,431 |
| Timothy Cook | 652,800 | 45,707,267 | 0 | 46,360,067 |
| Geoffrey Price | 2,410,273 | 53,606,558 | 0 | 56,016,831 |
| Brian Clem | 400,000 | 19,502,336 | 17,725(4) | 19,920,061 |
| Robert Guenthner | 514,515(3) | 5,599,780 | 15,410(5) | 6,129,705 |

## The Proxy Statement Contains Material Misstatements and Omissions

32.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Company management's financial projections; and (ii) the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor Centerview.

Accordingly, Oak Street stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

***Material Omissions Concerning Company Management's Financial Projections***

33.    The Proxy Statement omits material information with respect to Oak Street Health management's financial projections.

34.    For example, the Proxy Statement sets forth:

> However, in connection with the evaluation of potential strategic alternatives, as described further in the section of this proxy statement titled "*The Merger — Background of the Merger*", Oak Street Health's management team prepared certain unaudited prospective financial information for Oak Street Health for the remainder of fiscal year 2022 and fiscal years 2023 through 2028 (the "Projections"). The Company's senior management also prepared extrapolations of the Projections for fiscal years 2029 through 2037 and certain analyses related to the expected utilization of federal and state NOL carryforwards through 2032, which were provided to Centerview for purposes of its financial analyses summarized in the section above titled "— *Opinion of Centerview*".

Proxy Statement at 52.  The Proxy Statement fails, however, to disclose the Company's senior management's extrapolations of the Company's projections for fiscal years 2029 through 2037 and certain analyses related to the expected utilization of federal and state NOL carryforwards through 2032, which were provided to Centerview for purposes of its financial analyses.  The proxy Statement further fails to disclose the specific inputs and assumptions underlying the extrapolations.

35.    Additionally, the Proxy Statement fails to disclose the line items underlying the Company's (a) Platform contribution, (b) Adj. EBITDA, and (c) Unlevered Free Cash Flow.

36.    The omission of this information renders the statements in the "Certain Financial Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Financial Analyses***

37.    The Proxy Statement also describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Centerview's fairness opinion and analysis fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Oak Street's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to Oak Street's stockholders.

38.    With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the forecasted unlevered free cash flows of the Company during the period beginning the first quarter of 2023, and ending in December 2028 and extrapolation beginning the first quarter of 2029, and ending in December 2037; (ii) quantification of federal and state NOL carryforwards through 2032; (iii) the inputs and assumptions underlying the discount rates ranging from 11.25% to 13.50%; (iv) the Company's net debt as of December 31, 2019; (v) the number of fully-diluted outstanding shares of Oak Street common stock; and (vi) the implied terminal multiples resulting from the analysis.

39.    The omission of this information renders the statements in the "Opinion of Centerview Partners LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

40.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior

to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Oak Street will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

41.    Plaintiff repeats all previous allegations as if set forth in full.

42.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

43.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresents and/or omits material facts, including material information about (i) Company management's financial projections; and (ii) the inputs and assumptions underlying Centerview's financial analyses.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

44.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

45.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

46.    Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

47.    Plaintiff repeats all previous allegations as if set forth in full.

48.    The Individual Defendants acted as controlling persons of Oak Street within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Oak Street, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

49.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.    Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

51.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Oak Street stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Oak Street, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Oak Street stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  March 31, 2023                              **WEISS LAW**


                                        By    */s/ Michael Rogovin*
                                              Michael Rogovin
                                              305 Broadway, 7th Floor
                                              New York, NY 10007
                                              Tel: (212) 682-3025
                                              Fax: (212) 682-3010
                                              Email: mrogovin@weisslawllp.com

                                              *Attorneys for Plaintiff*